# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RAYMOND CHARLES COLLICA,
           Appellant,

        v.

DEPARTMENT OF THE ARMY,
           Agency.

DOCKET NUMBER
DC-0752-12-0618-I-2

DATE: February 25, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL [1]

Raymond Charles Collica, Tampa, Florida, pro se.

Cynthia Ruckno, and David W. Claypool, Falls Church, Virginia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as MODIFIED by our analysis relating to the agency's authority to direct the appellant's reassignment and remove him, we AFFIRM the initial decision.

¶2 The appellant was a Medical Evaluation Board (MEB) Attorney-Advisor in the Warrior Transition Battalion (WTB) stationed in Germany. MSPB Docket No. DC-0752-12-0618-I-1, Initial Appeal File (IAF), Tab 12 at 20, 55. He provided legal counsel to soldiers during the MEB process that served to determine whether a soldier's long-term medical condition enabled him or her to continue to meet medical retention standards, in accordance with Army regulations. *Id.* at 91. The findings of the MEB were referred to the Physical Evaluation Board, which determined fitness for continued service and eligibility for disability compensation. *Id.* On October 1, 2011, the agency implemented the Integrated Disability Evaluation System (IDES), which streamlined the disability rating process and provided that all processing would occur in the continental United States. *Id.* at 54. On March 1, 2012, after the appellant declined a voluntary reassignment to the Walter Reed National Military Medical Center (WRNMMC) in Bethesda, Maryland, the agency issued a management-directed reassignment and cited the IDES as the reason that the appellant was needed in the continental United States, where the processing would now take place, rather than in Europe. *Id.* at 54-56. The appellant refused

the reassignment and was removed from federal service effective May 25, 2012, for failure to accept a management-directed reassignment. *Id.* at 22.

¶3 The appellant filed an appeal arguing that his directed reassignment and subsequent removal were taken in retaliation for his whistleblowing. After conducting a hearing, the administrative judge affirmed the agency's removal action. MSPB Docket No. DC-0752-12-0618-I-2, Refiled Appeal File (RAF), Tab 46, Initial Decision (ID) at 2. She found that the agency's decision concerning the appellant's directed reassignment was a valid exercise of managerial discretion under the circumstances and was not arbitrary and capricious; therefore, the agency proved its charge by preponderant evidence. ID at 14-16. Concerning the appellant's whistleblower claim, the administrative judge found that the appellant established that his June 16, 2010 disclosures were protected by 5 U.S.C. § 2302(b)(8) and a contributing factor in his removal under the knowledge/timing test. ID at 21-24. She also found, however, that the agency established by clear and convincing evidence that it would have taken the same action in the absence of the disclosures. ID at 24-32. Finally, she found that the agency established a nexus between the appellant's refusal to accept the directed reassignment and the efficiency of the service and that the penalty was reasonable. ID at 32-33.

¶4 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 11. He makes several arguments on review that challenge both the administrative judge's findings and her rulings on discovery and hearing matters. *Id.* Among them, he argues that the agency committed harmful error because his supervisors lacked the authority to reassign and remove him pursuant to agency regulations. *Id.* at 17-23 (arguments 2, 3). He also argues that the administrative judge erred in her analysis of his whistleblowing claim, in part because she did not adequately apply *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), and in part because she failed to consider the other civilians in the WTB-Europe to be similarly situated to the appellant. *Id.* at 4-16, 25 (arguments

1, 6). He argues that the agency produced some discovery a mere 6 days before the hearing and that he was prejudiced by the administrative judge's denial of his motion to compel further discovery and grant an extension of time for him to review the large number of documents. *Id.* at 27-30 (arguments 9, 10). The agency has filed an opposition to the petition for review, to which the appellant has replied. PFR File, Tabs 17, 20. In light of the appellant's arguments on review relating to the authority of the acting officials in this case, the Clerk of the Board issued an order requiring the agency to identify each agency official involved in the decision to direct the appellant's reassignment and describe each official's role in the reassignment, including their authority to direct the appellant's reassignment. PFR File, Tab 21. The parties have filed responses to the order issued by the Clerk of the Board. PFR File, Tabs 25, 28-29.[2]

¶5      The appellant asserts for the first time on review that the agency committed harmful error because the agency officials responsible for his reassignment and removal were not authorized to direct his reassignment from his duty station in Germany to the WRNMMC or to remove him based on his refusal to accept the management-directed reassignment. PFR File, Tab 11 at 17-23. In support of this argument, the appellant relies on an email he received in discovery from the agency and entered into the record shortly before the hearing allegedly showing that Colonel (Col.) J.K., the United States Army Medical Command Staff Judge Advocate who directed the appellant's reassignment and was the deciding official

---

[2] After the close of the record on review the appellant filed additional submissions that included evidence that he had not previously submitted in this case. *See* PFR File, Tabs 30-31. The appellant asserted that the existence of some of the evidence was "previously unknown" to him and not provided in discovery by the agency. PFR File, Tab 30 at 4. The Board's regulations provide that, once the record closes, no additional evidence or argument will be accepted unless it is new and material as defined in 5 C.F.R. § 1201.115(d) and the party submitting it shows that the evidence or argument was not readily available before the record closed. 5 C.F.R. § 1201.114(k). Because the appellant has not shown that the evidence was not readily available before the record closed, and has not alleged or shown that any of his discovery requests would have covered this evidence, we have not considered these submissions in our review.

in the appellant's removal, IAF, Tab 12 at 22-23, 34-35, and Col. J.H., Director of the Office of Soldiers' Counsel who issued the advanced notice of management-directed reassignment and proposed the appellant's removal, *id.* at 30-32, 54-56, "knew that any reassignment of Appellant's position required the approval of both the Vice Chief of Staff of the Army . . . and The Judge Advocate General . . . of the Army, LTG [Lieutenant General] [D.C.]," PFR File, Tab 11 at 18. The email in question, which was sent to Col. J.K. by Chief M.E., Senior Legal Administrator at the U.S. Army Medical Command at Fort Sam Houston, Texas, on August 17, 2012, after the appellant's May 25, 2012 removal, IAF, Tab 12 at 20, indicates that the appellant's position was never moved to Fort Belvoir, that "any change in a WTU [Warrior Transition Unit] position requires the Vice Chief of Staff approval," and that it did not appear that there would be such approval. RAF, Tab 40 at 4, 7. The email also noted that the position was still on the "Heidelberg TDA [Table of Distribution and Allowances] (requirement and authorization) and scheduled to move to Landstuhl" and that the change will be reflected on the Fiscal Year 2014 TDA. *Id*. at 4; *see* PFR File, Tab 25 at 16 (declaration of Col. J.K. regarding the acronym "TDA"); *see also* RAF, Tab 39 at 180-81 (testimony of Col. J.H. regarding the acronym "TDA"). Chief M.E.'s email was sent in response to an August 16, 2012 email from Col. J.K. indicating that he had thought that the attorney "in the WTB has already been moved (auth not req) to WTB Fort Belvoir (This is Mr. Collica's position)." RAF, Tab 40 at 4. In a response to Chief M.E.'s email, Col. J.H. wrote on August 17, 2012, that she did not want an attorney in Europe. *Id*.

¶6      The Board generally will not consider an argument raised for the first time in a petition for review, such as the allegation of harmful error raised by the appellant, absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). Here, the agency provided the email in question, which was among what the appellant claims were more than

1,800 emails, a mere 6 days before the hearing and only 1 day before the prehearing conference. RAF, Tab 32; PFR File, Tab 11 at 28, Tab 20 at 11. This delay hampered the appellant's ability to review the materials and articulate the above argument for the administrative judge's consideration. Thus, we have considered the appellant's argument relating to the August 17, 2012 email. *Cf. Mendez v. Department of the Treasury*, 88 M.S.P.R. 596, ¶¶ 11-13 (2001) (considering on review new and material evidence that the agency neglected to provide during discovery).[3]

¶7        Even assuming, as Chief M.E.'s August 17, 2012 email suggests, that the agency could not move the appellant's position to the continental United States without the approval of the Vice Chief of Staff of the Army (VCSA), *see* PFR File, Tab 25 at 16 (declaration of Col. J.K. that he did not have the authority to move the appellant's position to the United States), the appellant has not shown that the agency committed harmful error in removing him. Harmful error is error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. 5 C.F.R. § 1201.56(c)(3). Here, the agency's authority to move the appellant's *position* on the agency's TDA, essentially on an organizational chart, is not at issue in this case. The attempt by the agency to move the position the appellant occupied in Germany occurred after he had been removed. Rather, this appeal of the appellant's removal implicates the agency's decision to direct his reassignment from the position he occupied in Germany to an already-existing vacant position at WRNMMC, and the appellant's refusal to

---

[3] The appellant asserts that the administrative judge failed to grant him an extension of time to review the emails, despite the agency's apparent agreement to such an extension. PFR File, Tab 11 at 28 (argument 9). He contends that he did not discover many of the relevant emails until after the hearing, and that he has attached these emails to his petition for review as new evidence. *Id*. The appellant, however, has not shown how any of the emails he submits on review are relevant to the issues he has raised on review and would warrant an outcome different from that of the initial decision. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

accept that reassignment. *See* PFR File, Tab 25 at 16. The movement of positions and the movement of personnel between positions are not synonymous. *Id*. Moreover, it is not unusual for a vacant position to remain on the books and unfilled until the position is moved or eliminated when "manpower accounting catches up." *Id*. at 16, 19-20. Thus, this argument by the appellant is unavailing, whether it is framed as a claim of harmful error or as a claim that the agency did not prove that its removal action promoted the efficiency of the service.

¶8        The appellant relies on Army Regulation (AR) 690-200, chapter 213, section 4-13, and appendix C, section 3, in support of his claim that Col. J.K. did not have the authority to direct his reassignment. PFR File, Tab 11 at 22-23. Section 4-13 provides that the responsible qualifying authority, here the Judge Advocate General, will "[b]e notified before action is taken to involuntarily reassign . . . a civilian attorney." *Id*. at 33, 38. Appendix C, section 3 provides that, with respect to lateral/change to lower grade actions, a "person who is appointed to a civilian attorney position may, upon approval of TJAG [The Judge Advocate General], be placed noncompetitively in another civilian attorney position at the same or lower grade by a new appointment, reassignment, or change to lower grade." *Id*. at 43. The appellant, however, does not allege that AR 690-200 was part of the discovery documents provided to him by the agency shortly before the hearing or that AR 690-200 is otherwise new and material evidence that, despite his due diligence, was not available when the record closed. *See* 5 C.F.R. § 1201.115(d). In fact, it appears that AR 690-200 was not among those documents the appellant submitted below after the agency provided him with discovery documents shortly before the hearing. *See* RAF, Tabs 37, 39-44. The agency described the documents it submitted shortly before the hearing as consisting of emails from various individuals and a "2 March 2012 Supplemental Information Regarding Mr. Collica." RAF, Tab 32 at 4. There is no indication that the agency provided a copy of AR 690-200 to the appellant as part of this

supplementation of discovery. Thus, the appellant has not shown that the Board should consider this new argument on review. *See Banks*, 4 M.S.P.R. at 271.

¶9        Even if we were to consider the appellant's new argument that Col. J.K. needed the approval of TJAG to direct his reassignment, a preponderance of the evidence shows that Col. J.K. had such approval. Lieutenant General (Lt. Gen.) D.C. was TJAG during the period in question. RAF, Tab 39 at 182, 240, Tab 10 at 11; IAF, Tab 14 at 5; *see* PFR File, Tab 25 at 7. The record reflects that the numerous emails the appellant sent to Col. J.K. protesting his reassignment were also sent to Lt. Gen. D.C. IAF, Tab 12 at 37, 39, 47, 50, 64-67, 74-75. It further appears that Lt. Gen. D.C. tasked Col. J.K. with responding to the appellant's emails. *Id*. at 71. In his initial response, Col. J.K. informed the appellant that there was no longer a requirement for soldiers' counsel to remain in Europe because all IDES processing effective October 1, 2011, would take place near Veterans Administration facilities in the continental United States. *Id*. Thus, Col. J.K. expressed regret that the appellant had declined the offer of a position identical to the appellant's job but with a duty station at WRNMMC. *Id*. at 71-72. There is no indication that Lt. Gen. D.C., having been aware of the appellant's desire to remain in Germany, ever expressed any objection to the reassignment. In fact, Col. J.K. averred that numerous times throughout the decision-making process concerning the appellant he personally coordinated with the Office of the Judge Advocate General Civilian Personnel Leadership, which was fully aware of, and posed no objection to, the decision to direct the appellant's reassignment. PFR File, Tab 25 at 17. Under these circumstances, the agency has shown by preponderant evidence, i.e., that a reasonable person considering the record as a whole would find it more likely to be true than untrue, *see* 5 C.F.R. § 1201.56(c)(2), that Col. J.K. had Lt. Gen. D.C.'s approval to reassign the appellant. There is no indication in AR 690-200 that the approval of Lt. Gen. D.C. needed to be in writing or in some other form. Thus, even considering this argument, which as set forth above is not based on new and

material evidence, the appellant has not proven harmful error, and the agency has otherwise shown by preponderant evidence that it properly ordered the geographic reassignment due to bona fide management considerations in the interest of promoting the efficiency of the service and in accordance with agency discretion under 5 C.F.R. part 335. *See* ID at 7-16; *see also Miller v. Department of the Interior*, 119 M.S.P.R. 438, ¶ 8, *aff'd as modified on recons*., 120 M.S.P.R. 426 (2013).

¶10      Even if Lt. Gen. D.C.'s approval had not been obtained, we would still find that the agency has proven its charge. The Board's review of a directed assignment action is to assure that this otherwise legitimate management tool is not used for illegitimate reasons and that, in so doing, it focuses on the actual reasons for the reassignment rather than the means by which it was effected. *Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 406, *aff'd*, 73 F.3d 380 (Fed. Cir. 1995) (Table). That is, the Board's review centers on the legitimacy of the reasons for the reassignment, not on whether the action was or should be reversed on technical, procedural, or other grounds. *See id*. Applying these considerations here, we agree with the administrative judge that the agency had a legitimate management reason for directing the appellant's reassignment: that due to the September 1, 2011 implementation of the IDES through issuance of ALARACT (All Army Activities) Directive 374/2011, IAF, Tab 12 at 84-88; PFR File, Tab 17 at 4, all MEB proceedings would take place in the continental United States, such that the appellant's presence in Germany was no longer needed. *See* ID at 3-5, 9-14; *see also Cooke*, 67 M.S.P.R. at 406. Any allegation that the agency used a "wrong method" to effect its otherwise proper decision to direct the appellant's reassignment "does not impinge on the legitimacy of the reasons for the assignment, just the method by which it was effected." *Cooke*, 67 M.S.P.R. at 406-07.

¶11      The appellant further alleges that, as an employee assigned to the WTB-Europe, only the WTB-Europe had the authority to initiate a reassignment

or removal action against him, not the appellant's "technical supervisors" in the United States. PFR File, Tab 11 at 18. Again, the appellant did not raise this argument below, has not shown that it is based on new and material evidence that was unavailable before the record closed below despite his due diligence, and has otherwise provided no support on review for this bare allegation. *See Banks*, 4 M.S.P.R. at 271. In fact, the record shows that Col. J.K. had supervisory authority over attorneys such as the appellant, who worked in the Office of Soldiers' Counsel. PFR File, Tab 25 at 15.

¶12        The appellant contends that the administrative judge's failure to grant him additional time to review the emails provided to him by the agency shortly before the hearing prevented him from requesting witnesses who would have "confirmed what the emails indicate, i.e. that VCSA, TJAG and WTB-E[urope] approval were required in order to reassign Appellant to the U.S." PFR File, Tab 11 at 29-30 (argument 10). He does not, however, identify the witnesses he would have called or explain in greater detail the nature of their expected testimony. To the extent the appellant contends that these unnamed witnesses would merely "confirm" what was indicated in certain emails, he has not shown that such evidence would be relevant, material, and nonrepetitious. *See* 5 C.F.R. § 1201.41(b)(10). We further discern no error in the administrative judge's rulings on hearing testimony,[4] discovery, and motions, *see* PFR File, Tab 11 at 26 (arguments 7-8), and we are not persuaded by the appellant's argument that doctors, nurses, and employees in other occupations within the WTB-Europe are similarly situated to him, *see* PFR File, Tab 20 at 8.

¶13        We find no basis in the appellant's petition for review to disturb the administrative judge's determination that the appellant failed to establish his

---

[4] The appellant argues that the administrative judge improperly limited the testimony of one of the witnesses concerning newly-hired paralegals. The appellant has shown no abuse of discretion by the administrative judge in this regard. We find any such testimony to be of limited value to the issues on review.

claim that he was reassigned in reprisal for his whistleblowing activity. ID at 17-32. In an adverse action appeal, such as this, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013). Once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Id.*

¶14     As the administrative judge noted, the agency stipulated that, for limited purposes of this appeal, the appellant's June 16, 2010 communications alleging fraud, waste and abuse included disclosures that are protected by 5 U.S.C. § 2302(a)(8). ID at 21. The agency's stipulation satisfies the appellant's burden of proving that he made a disclosure protected by 5 U.S.C. § 2302(b)(8). *See* 5 C.F.R. § 1201.63.

¶15     Moreover, we agree that the appellant established that his June 16, 2010 protected disclosures were a contributing factor in his directed reassignment, and thus, the removal action. ID at 22-24. As the administrative judge noted, Col. J.K. was the deciding official in the appellant's removal action; he testified that he also had the authority, and made the decision, to direct the appellant's reassignment to the Attorney Advisor position at WRNMMC; and he testified that he became aware of the appellant's whistleblower retaliation claim before the agency directed the appellant's reassignment. Further, the reassignment was directed on March 1, 2012, approximately 1 year and 9 months after the appellant's disclosure. ID at 23-24. Under these circumstances, the administrative judge correctly determined that the appellant met his burden of establishing, under the knowledge-timing test, that his disclosures were a contributing factor in the agency's personnel actions. ID at 24.

¶16     Because the appellant made protected disclosures that were a contributing factor in his removal based on his failure to accept a directed reassignment, the

agency was required to prove by clear and convincing evidence that it would have taken the same action in the absence of the protected disclosures. *See* 5 U.S.C. § 1221(e)(2). We agree with the administrative judge that the agency met its burden. ID at 24-32. As the administrative judge recognized, in determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel actions in the absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. ID at 25; *see Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

¶17      In examining the strength of the agency's evidence, the administrative judge considered that the Department of the Army issued ALARACT 374/2011 on September 11, 2011, that the directive was implemented as ordered, and that the appellant's directed reassignment to that position was consistent with, and a logical extension of, the directive to implement the IDES, and to return MEB clients to the continental United States for processing. ID at 26. The administrative judge further noted that, in accordance with the ALARACT 374/2011 directive, the Army soldiers in Europe were being returned to the United States for the MEB process, and that even those few who were granted an exception were eventually returned to the United States for completion of the MEB process. ID at 26. The administrative judge rejected the appellant's argument that his directed reassignment "was not justified from a work perspective," noting that both Col. J.K. and Col. J.H. testified that the appellant's former position in Wiesbaden, Germany, has not been filled, but that the MEB Attorney position that the appellant declined at WRNMMC was filled. ID at 26. The administrative judge also found that the agency's decision to direct the appellant's reassignment was a valid exercise of managerial discretion, and

concluded that the agency's evidence in support of its action directing the appellant's reassignment, and removing him when he refused the reassignment, was very strong. ID at 26. We find no reason to disturb these findings on review, which are firmly grounded in the record.

¶18 Regarding the strength of any retaliatory motive on the part of the officials who were involved in the decision in question, we agree with the administrative judge that Col. J.H. was strongly motivated to retaliate against the appellant because of his June 16, 2010 protected disclosures, that she strongly disliked him, and likely wanted to see his employment with the agency terminated. ID at 27-29; *see, e.g.*, RAF, Tabs 24, 37, 39-43 (email correspondence from Col. J.H.). However, as the administrative judge recognized, it was not Col. J.H., but Col. J.K., who made the decision to direct the appellant's reassignment to the WRNMMC. ID at 29.

¶19 The administrative judge determined that, unlike Col. J.H., Col. J.K. was not affected by the appellant's protected disclosures, he did not have any motivation to retaliate against the appellant because of his protected disclosures, and he did not have any animosity towards the appellant. ID at 29. He also carefully considered whether Col. J.H., acting because of an improper animus, influenced Col. J.K.'s decisions to direct the appellant's reassignment, and to remove him, even if Col. J.K. was unaware of the improper animus when he implemented his decisions. ID at 30-31; *see Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011). The administrative judge determined, however, that she did not make, or constructively make, the decisions concerning the appellant's directed reassignment and/or his removal. ID at 31. In making her determination, the administrative judge noted, inter alia, that although Col. J.K. acknowledged that he discussed the issue of where they needed to locate personnel with other members of his staff, including Col. J.H., he stated that he did not recall specifically discussing the appellant's directed reassignment with Col. J.H., that he made the decisions to direct the appellant's reassignment, and to remove him,

and that he also denied that he was improperly influenced by Col. J.H. with regard to those decisions because of any improper animus that she may have had. ID at 31.

¶20 Thus, even though the administrative judge found that Col. J.H. had a significant motive to retaliate against the appellant, she concluded that Col. J.K., who made both the decision to direct that appellant's reassignment to WRNMMC, and to remove him when he declined the reassignment, established a credible and compelling reason for directing the appellant's reassignment, and that his decisions were not improperly tainted by any improper animus that Col. J.H. had towards the appellant. ID at 31.

¶21 We discern no error in the administrative judge's finding that the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of his disclosures. *See* ID at 17-32. In so finding, the administrative judge explicitly relied in part on demeanor-based credibility determinations, which the Board will not overturn absent "sufficiently sound" reasons for doing so. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). We find no such reasons here. Accordingly, we agree with the administrative judge that the appellant failed to establish his affirmative defense of whistleblower reprisal.

¶22 We decline the appellant's invitation to review every objection and motion that he made below in the absence of a specific argument on review. *See* PFR File, Tab 11 at 31 (argument 13); *see also* 5 C.F.R. § 1201.114(b) (the Board's regulations require that a petition for review state objections to the initial decision that are supported by references to applicable laws or regulations and by specific references to the record). We find immaterial the appellant's arguments concerning the existence of other vacant attorney positions in Europe and an internal investigation, which he claims was tainted by a conflict of interest. PFR File, Tab 11 at 23-25 (arguments 4-6). Additionally, the appellant's brief and unspecific argument concerning the administrative judge's denial of his motion

for interlocutory review does not persuade us to review this issue further. *Id.* at 31 (argument 12).

¶23    The appellant also argues that the administrative judge exhibited bias and a deep-seated favoritism toward the agency. PFR File, Tab 11 at 30 (argument 11). He asserts that the administrative judge engaged in ex parte telephone conversations "attempting to convince [him] to drop his case, stating . . . that he had almost no chance of prevailing and that he would be stigmatized as a whistleblower in public records following an initial decision affirming the [a]gency's actions." *Id.* Administrative judges routinely engage in settlement discussions in which they may discuss the elements of a case and its strengths and weaknesses in order to pursue a resolution. IAF, Tab 22; *see Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶ 11 (2013). Additionally, we have reviewed the hearing testimony in its entirety and disagree with the appellant's unspecific assertions that the administrative judge selectively ruled in favor of the agency; indeed, we observe that the administrative judge sustained and overruled objections by both the agency and the appellant, and we discern no abuse of discretion in her rulings. The appellant takes issue with the administrative judge's characterization of an email in the record as bearing on his performance because the removal action is not performance-based. PFR File, Tab 11 at 30 (argument 11). The administrative judge, however, made no findings concerning his performance or the merits of any performance-based action. She merely noted that Col. J.H.'s emails, such as the one indicating that she contemplated the adverse action based on performance, demonstrated that Col. J.H. strongly disliked the appellant and had a strong motive to retaliate against him, which is a finding in his favor. ID at 28-29. Thus, we find that the appellant has not established "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶24       Accordingly, we AFFIRM the initial decision AS MODIFIED by this Final Order.  The appellant's removal is SUSTAINED.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in

Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
                William D. Spencer
                Clerk of the Board

Washington, D.C.